VASQUEZ *v.* STATE OF INDIANA.

[No. 768S110. Filed July 30, 1970. Rehearing denied September 23, 1970.]

*Norbert L. Wyss, Kenneth M. Waterman,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *John J. Dillon,* Former Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a conviction of rape. The appellant's assignment of error avers that the trial court erred in overruling his motion for a new trial. In particular it is argued that certain evidence introduced at trial was erroneously admitted over appellant's objection that he was not fully advised of his constitutional rights prior to being questioned by the police.

The crux of appellant's argument concerns the following objection and ruling by the trial court made during the direct examination of one of the police officers:

"Q. Sgt. Herman, did you have a conversation with him that morning?
A. Yes, I did.
Q. And did you advise him of his constitutional rights?
A. Yes, sir.
Q. *And what rights did you advise him he was entitled to?*
A. *We advised him he didn't have to talk to us; anything he would say could be used against him in a court of law; that he [sic] a right to have an attorney and if he couldn't afford an attorney the court would appoint one.*
Q. Did he call anybody or obtain an attorney?
A. He called his brother at work. He did contact his brother, I believe, to make arrangements for an attorney.
Q. Did he agree to talk to you after that?
A. Yes, sir, he talked with us.

Q. And did you determine what his address was?

A. He advised us that he—

MR. WYSS: Your Honor, I am going to object to any submission into the evidence of anything that this man said at the time and place indicated by Officer Herman, for the reason that he was not properly advised of his constitutional rights.

There is one important detail missing here, Your Honor, and that is this: He told this man that anything he said could be used against him; that he had a right to have an attorney present at the time that he was talking to him and this is absolutely a requisite of admission to any statement he made in evidence; this is the latest law on this question in the *Miranda* case and every other important recent case that had been handed down by the United States Supreme Court.

MR. HELMKE: He advised him he had a right to have an attorney and make a phone call and he did make a phone call.

MR. WYSS: The Prosecutor knows he must tell him, the officer must tell him that he has a right to have an attorney present during the conversation.

MR. HELMKE: He can waive that right if he wishes, Your Honor.

THE COURT: Objection overruled.

Q. You may testify as to what your conversation was. I asked you, Sgt. Herman, whether or not he advised you of his address?

A. Yes, sir he advised he was staying at the upstairs apartment with the Torrez family.

Q. He advised he was living with Mr. and Mrs. Torrez?

A. Yes.

Q. Were you able to understand him when he said this to you?

A. No, he was operating through an interpreter at this time. Mrs. Torrez had agreed to interpret for us.

Q. Mrs. Torrez was with Mr. Vazquez at this time?

A. Yes, she was in the interrogation room with us.

Q. Was anybody else present?

A. At this time there was Sgt. Royse and myself and Mrs. Torrez and Vazquez were in the room.

Q. So it was through Mrs. Torrez's interpretation that you learned he had actually lived at 722½ West De-Wald Street?

A. Yes.

Q. Was there anything else said by Mr. Vazquez in response to your question?

A. Well, we had asked him about his activities of the evening in question and at that time he advised us that, I believe, it was payday and that he had been to the Gay Nineties at the Corner of Broadway and Taylor; that he had left there, I think it was approximately 11:30 or so, and had gone home and he stated the time he got home the Torrezes were both asleep.

Q. Did he say at what time he arrived home?

A. I believe it was approximately 11:30, either left the tavern about that time or arrived home at that time, I'm not exact on that.

Q. Did he say he was alone when he came home?

A. Yes, Sir.

Q. But he did arrive at the address known as 722½ West DeWald Street, according to him, sometime that night?

A. Yes, sir." (Emphasis Added)

At one other point during the course of the trial the appellant had reason to make an objection similar to the above. This occurred when the other police officer who was present during the interrogation of the appellant testified as to the conversation. As substantially the same matters were related and questions raised, we need not burden this opinion with this latter testimony, objection, and ruling.

Appellant argues that he was never clearly advised that he could have counsel present with him during the interrogation. The State argues that it is apparent that while appellant was not told he could have an attorney "present during the interrogation," he was at the same time told that he did not have to answer any questions. That information covered the situation adequately.

Be that as it may, and regardless of such contentions, we believe there exists another reason why appellant's position is

without merit. The statements made by the appellant were in substance that on the night in question he was at a bar until 11:30 p.m. and then went home. Further, appellant stated during the interrogation that he was wearing a dark pair of pants, a plaid sport jacket, and a black shirt with gold polka dots.

Thus, the statements made by the appellant were very general in nature. They were not confessions. In addition, the appellant, on direct examination, testified as to the same facts adduced during the police interrogation.

"Q. Now, Mr. Vasquez, recalling the 21st day of March 1967, what time did you arrive home from work?

A. He got off at 3:30. They got paid Tuesdays. Then we went to the store, Mr. Chavin, to get some money but he was closed and then from there we went home, then we picked up the wife of Mr. Torrez at the hospital and then we picked up the kids and then we arrived at home.

Q. What time?

A. Around 4:30.

Q. Did you have something to eat there that evening?

A. Yes.

Q. What time did you leave?

A. 6:30 or 7:00.

Q. And what time did you return?

A. I was at the Gay Nineties, the tavern on Broadway, and I was talking to a man, he's an American, he speaks a little Spanish. He makes pizzas there. Then I was drinking a beer and talked to him, and then he told me that it was a quarter to 2:00, he stopped serving. Then after he drank his last beer he went home.

Q. Did you walk home?

A. He walked from there on Broadway and then to DeWald and then DeWald home.

Q. Did you stop on the way home?

A. No.

Q. Were you alone?

A. Yes.

Q. Were you alone all evening?

A. After I left home.

Q. What articles of clothing did you have on when you left home on the evening we were referring to before?

A. Black boots, black pants, the jacket of John Torrez and the shirt of John Torrez.

Q. Was that the polka dot shirt we saw in Court earlier today?

A. Yes, it is.

Q. Did you see Mrs. Nichael that night?

A. She used to open the door and look at us and see us in the window. She would open the window and she would see us.

Q. Did you see her that night?

A. No."

Not only did the appellant testify to the same facts contained in the statement of the police officers, not refuting any of them, but also two other defense witnesses, namely, appellant's landlord and the landlord's wife, testified to the same facts relative to the clothing worn and where the appellant was during the night in question. We thus conclude that the admission of the questioned statements made to the police officers, at the most, from appellant's point of view, constitutes harmless error. *Greer* v. *State* (1969), 252 Ind. 20, 245 N. E. 2d 158; *MacGregor* v. *State* (1967), 249 Ind. 195, 231 N. E. 2d 241.

For the above reason, the judgment of the trial court is affirmed.

Hunter, C.J., Givan and DeBruler, JJ., concur. Jackson, J., dissents with opinion.

## Dissenting Opinion

JACKSON, J.—I am unable to concur in the majority opinion and dissent thereto. It is my opinion that appellant was not adequately advised of his constitutional rights as specified in the case of *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86

S. Ct. 1602, 16 L. Ed. 2d 694. The United States Supreme Court in *Miranda* stated:

> "Accordingly, we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an *absolute prerequisite to interrogation* * * *." (Emphasis supplied)

Appellant was not advised that he could have an attorney present during the interrogation, therefore, he was not adequately advised of his constitutional rights. Accordingly, the lower court erred in admitting into evidence appellant's statements given to the officers during interrogation.

The judgment of the trial court should be reversed and the cause remanded with instructions to sustain appellant's motion for new trial.

NOTE.—Reported in 260 N. E. 2d 779.