## CARL A. VADEN *v.* STATE OF INDIANA

[No. 278S29. Filed December 13, 1978.]

*Richard E. Sallee, White, Johnson, LaMay & Sallee*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

HUNTER, J.—The defendant, Carl A. Vaden, was tried by jury and was

convicted of second-degree murder. He now asserts that uncorrected errors of law occurred at trial and that the verdict was not supported by sufficient evidence. The issues before us in this appeal can be consolidated as follow:

1.  Did the trial court err in overruling the defendant's motion to suppress his confession?

2.  Did the trial court err in allowing the introduction into evidence of certain photographs of the deceased?

3.  Did the trial court err in refusing to give certain of defendant's tendered instructions?

4.  Did the trial court err in overruling the defendant's motion for judgment on the evidence?

5.  Was the verdict supported by sufficient evidence on the element of malice?

Charles White, the deceased, was twenty-one months old on the date of his death. The facts most favorable to the state show that Renee White, Charles White's mother, had left Charles in the care of the defendant while she went to the grocery. During her absence, the defendant, who had become irritated by the baby's crying, whipped Charles with a belt, grabbed him, shook him, and pushed him against the side of a dresser. After Charles's head hit the dresser, he stopped crying. The defendant at first placed him on the edge of the bed and later transferred him to the baby pen. When Renee White came home, she asked the defendant what was wrong with Charles. The defendant replied that Charles was sleeping. Renee attempted to rouse the baby, and when she failed, she summoned an ambulance. A police officer who reached the scene before the ambulance noted that Charles was still alive but unconscious when he left for the hospital.

Charles was taken to the hospital where personnel failed to revive him. An autopsy was performed which disclosed severe bruises all around Charles's head and body; his right arm was hanging out of place — dislocated; his left arm was broken. In the opinion of the doctor performing the autopsy, Charles White died as a result of multiple in-

juries. Renee testified that when she left for the grocery store, Charles had a slight cold, but was otherwise fine.

## I.

The defendant argues that his confession should have been suppressed because the confession was elicited from him at a time when he was in pain and in need of medication and because the police made threats to him and offered promises of immunity and medical treatment in exchange for the confession. We have reviewed the record, and we find that the defendant acknowledged that he had been advised of and knew his rights and that no threats or inducements had been offered him. We shall not discuss the voluntariness of the defendant's confession further because the defendant has waived any theoretical error by testifying to substantially the same facts as those contained in his confession. *See Vasquez v. State*, (1970) 254 Ind. 472, 260 N.E.2d 779; *Greer v. State*, (1969) 252 Ind. 20, 245 N.E.2d 158; *MacGregor v. State*, (1967) 249 Ind. 195, 231 N.E.2d 241. In his testimony, the defendant admitted that he struck and shook the child, and he also expressed remorse over his actions. The trial court did not err in admitting the defendant's similar confession.

## II.

Photographs of the deceased baby were shown to the jury over the defendant's objection. The photographs illustrated the child's injuries. Since relevancy is the controlling question to be answered regarding the propriety of admitting photographs into evidence, *White v. State*, (1978) 269 Ind. 479, 381 N.E.2d 481, we must look to the testimony offered to determine whether a witness was permitted (without objection) to describe the objects or scenes photographed. *See Pierce v. State*, (1970) 253 Ind. 650, 256 N.E.2d 557. The record includes much description of the baby's bruises and limbs; both lay and medical testimony were admitted. The physician who performed the autopsy identified and explained each photograph. There was no error in the admission of the photographs. *Lund v. State*, (1976) 264 Ind. 428, 345 N.E.2d 826; *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264.

### III.

Next the defendant argues that the trial court erred in refusing to give three tendered instructions. The first instruction which was refused (Defendant's Tendered Final Instruction Number 1) concerned circumstantial evidence and the drawing of inferences. The court gave an instruction which was very thorough on the subject of circumstantial evidence; that instruction stated that the evidence must "point so surely and unerringly to the guilt of the defendant, as to exclude every reasonable hypothesis of his innocence." Since the contents of the instruction were adequately covered in another instruction, the trial court did not err in refusing the defendant's instruction. *Sulie v. State*, (1978) 269 Ind. 204, 379 N.E.2d 455; *Hackett v. State*, (1977) 266 Ind. 103, 360 N.E.2d 1000.

The trial court also refused to give Defendant's Tendered Final Instruction Number 2. That instruction dealt with the element of malice. As part of the instruction, defendant proffered the following words: "The use of the a deadly weapon may be sufficient to infer malice. And, a belt is not per se a deadly weapon." The trial court sustained the state's objection to the instruction on the grounds that the instruction was repetitive of other court instructions on malice and that the reference to a belt being *per se* a deadly weapon was improper. We agree. The jury was adequately instructed upon the element of malice by the content of other court instructions. *Sulie v. State, supra; Hackett v. State, supra.* Moreover, by isolating the belt specifically within the instruction, the defendant would have invaded the province of the jury as a fact-finding body. *See Bowen v. State*, (1920) 189 Ind. 644, 128 N.E. 926; *Barker v. State*, (1874) 48 Ind. 163. Even if the defendant were to argue that the instruction was technically correct, the terminology "deadly per se" would likely mislead the jury; therefore, the instruction was properly refused. *See Deilks v. State*, (1895) 141 Ind. 23, 40 N.E. 120.

The Defendant's Tendered Final Instruction Number 3 read:

"If you find in your deliberations that the defendant, Carl A. Vaden, is guilty only of using excessive means of punishment of a child, which excessive means brought about the death of that child, then you must find that the defendant is guilty of involuntary manslaughter."

The trial court denied the giving of the instruction. The court did instruct generally on both voluntary and involuntary manslaughter. There was no error in refusing the defendant's tendered instruction since it failed to designate that involuntary manslaughter must be "without malice, expressed or implied." *See* Ind. Code § 35-13-4-2 (Burns 1975). The jurors were adequately instructed on the lesser included offenses of murder.

## IV.

Finally, the defendant argues that the trial court erred in overruling his motion for judgment on the evidence and that the verdict was not supported by sufficient evidence. Both of these contentions rest upon the supposition that the state failed to show malice. The defendant did not deny that he not only whipped Charles, he also shook him (severely enough to dislocate one arm and break the other), and he shoved him forcefully against a dresser. There can be no rationalization that such brutality was punishment (*if ever* a twenty-one month old child merits physical disciplining). There was not even any indication that the child has misbehaved; the child had begun crying when his mother left for the grocery. The attack on the twenty-one month old child was by the five foot eleven inch, one hundred forty pound defendant. In *Wahl v. State*, (1951) 229 Ind. 521, 530, 98 N.E.2d 671, 675, this Court stated that "Malice may be inferred from any deliberate or cruel act by one person against another." The evidence was undisputed that defendant deliberately abused the child.

In *Corbin v. State*, (1968) 250 Ind. 147, 234 N.E.2d 261, another twenty-one-month old child was beaten to death. The defendant in that case also questioned the proof of malice. We stated:

> "Any one with reasonable judgment would know that one of the blows of the magnitude of any of these numerous blows could have fatally injured this child. . . . Where such blows of such magnitude are repeated, any jury would have a right to conclude that the perpetrator intended to kill. *Malice as a legal inference may be deducted from a perpetration of any cruel act, and the law presumes an individual intends the consequences of his acts.*" 250 Ind. 147, 150, 234 N.E.2d 261, 263 [emphasis added].

This Court has held innumerable times that malice may be shown by evidence that the defendant deliberately used a deadly weapon in such

a way as likely to produce death, and that in such a case, the purpose to kill may be inferred from the act of killing. *See* citations within *Covington v. State*, (1975) 262 Ind. 636, 322 N.E.2d 705. "Instrumentalities that are harmless in their general usage may, nevertheless be regarded as lethal when utilized in a harmful manner. . . ." *Covington v. State, supra*, 262 Ind. 636, 643, 322 N.E.2d 705, 708. The record demonstrates that the jury heard sufficient evidence upon which to base its verdict that the defendant was guilty of second-degree murder.

For all the foregoing reasons there was no trial court error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

Givan, C.J., DeBruler, Prentice and Pivarnik, JJ., concur.

NOTE—Reported at 383 N.E.2d 60.