**Ronald E. HORNE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 981S237.**

Supreme Court of Indiana.

March 7, 1983.

Rehearing Denied May 10, 1983.

Gregory L. Caldwell, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Latr025 Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On June 10, 1980, Defendant-Appellant Ronald E. Horne was found guilty of murder by a jury in the Hamilton Circuit Court. He subsequently was sentenced by the trial judge to a term of confinement for forty (40) years. Horne now directly appeals. Ignoring those issues explicitly waived in Appellant's brief, we find that Appellant raises the following four issues:

1. whether Appellant's conviction is supported by sufficient evidence and therefore is not contrary to law;

2. whether the trial court erred by admitting certain photographs into evidence;

3. whether the trial court erred by refusing to declare a mistrial because of certain allegedly improper comments made by the trial judge during Appellant's trial; and

4. whether the trial judge properly sentenced Appellant.

Defendant-Appellant Horne married Beverly Estep on March 16, 1979. At that time, Beverly was the mother of Matthew Estep, an infant aged thirteen months. On April 12, 1979, Beverly left Matthew at home in Appellant's care while she went to a neighbor's house on a brief errand. Matthew was in good health when she left. When she returned approximately fifteen minutes later, Matthew was barely able to breathe and had massive bruises on one side of his head. His eyes were fixed in a stare. Beverly promptly called the police who immediately summoned medical aid. Matthew subsequently died from his injuries. Doctors attending Matthew observed extensive bruising on the left side of his head and neck and on his left shoulder. His left ear was "one solid discolored bruise." The child suffered hemorrhaging and severe brain damage. There was massive internal bleeding. Emergency Room Doctor Susan Swin-

dell testified that in her opinion, Matthew's injuries could not have resulted from his falling from bed. Appellant initially had stated to the police that Matthew fell from his bed and struck his head on the bedpost. Appellant later stated to the police and to others that he struck the child because it was crying. Appellant specifically told John Schoolcraft, a jail cellmate, that he smacked the baby when it continued to cry. He told Schoolcraft that when Matthew wouldn't stop crying, he continued to hit him. Schoolcraft testified that Appellant also informed that he was going to "beat the rap" by pleading insanity. Daniel Clark, another cellmate, likewise testified that Appellant told him that he caused Matthew's injuries.

I

Appellant now claims that although there was evidence from which the jury could infer that he struck Matthew and caused the injuries which resulted in Matthew's death, there was no evidence that he acted "knowingly" or with a specific intent to kill Matthew. The direct evidence shows that Matthew was severely beaten about his head, face and shoulders. In a similar case involving a father's infliction of fatal blows upon his twenty-one month old daughter, this Court affirmed that father's second degree murder conviction stating:

"Anyone with reasonable judgment would know that one of the blows of the magnitude of any of these numerous blows could have fatally injured this child, which apparently was sick at the time. Where such blows of such magnitude are repeated, any jury would have a right to conclude that the perpetrator intended to kill. Malice as a legal inference may be deducted from a perpetration of any cruel act, and the law presumes an individual intends the consequences of his acts."

*Corbin v. State,* (1968) 250 Ind. 147, 150, 234 N.E.2d 261, 262, *reh. denied.* In another murder case wherein the appellant argued that the State failed to prove the absence of

heat of passion and failed to prove that he acted "knowingly," this Court stated:

"The jury was in fact instructed on the lesser included offense of voluntary manslaughter. Whether or not appellant was of such a state of mind as to be guilty of murder or whether he acted in the heat of passion upon sufficient provocation, are questions for the jury."

*Hulen v. State*, (1980) Ind., 413 N.E.2d 907, 908. *Hulen* relied on *Burkhalter v. State*, (1979) Ind., 397 N.E.2d 596, to further conclude that "knowingly" as used in Indiana's current criminal code is synonomous with "purposely" as used in prior murder statutes. Thus, an act is done "knowingly" or "purposely" if it is willed, is the product of a conscious design, intent or plan that it be done, and is done with an awareness of the probable consequences. *Hulen* also held that evidence which proved a deliberate and vicious unprovoked attack on an unarmed person was evidence upon which a jury could properly decide that a defendant knowingly and intentionally killed a victim. The victim in the instant case was a thirteen month-old infant. The evidence amply showed that Appellant "knowingly" struck said infant several times because he was upset over its crying. The instant jury was instructed on murder and on the lesser included offenses of voluntary manslaughter and reckless homicide. The jury determined from the facts presented to it that Appellant was guilty of murder.

■ Appellant further claims that a statement made by the trial judge during sentencing indicated that the trial judge did not believe that the evidence showed Appellant guilty of murder. Accordingly, Appellant argues that the trial judge should have reduced Appellant's conviction to manslaughter or granted a new trial pursuant to Ind.R.Tr.P. 59(J)(7). Said rule provides in part:

"In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence."

When sentencing Appellant, the trial judge stated:

"I think as a matter of law, if . . . if the truth, the bare unvarnished truth could be microscoped and put down in . . . on the glass and looked at I believe that even a twenty (20) year charge under homocide (sic), I think that this man had had a few beers, he was sleepy, he was tired, the child bothered him, the child ah . . . and he got up and lost his tempter (sic). He went into a fit of rage and that . . . but the jury did not find that. The jury found murder. And I find in this case that there are definite aggravating . . . ."

The trial judge went on to adjudge Appellant guilty of first degree murder. He sentenced Appellant accordingly. We do not find that this comment represents an admission by the judge that he believed the evidence insufficient to prove Appellant guilty of murder beyond a reasonable doubt. The trial judge apparently was suggesting that an alternative conclusion could have been inferred from all the evidence presented during Appellant's trial, but that the jury's verdict was proper nonetheless.

■ As the State points out, when a trial court grants a new trial because the jury's verdict is not in accord with the evidence, the trial court must make special findings of fact pursuant to Ind.R.Tr.P. 59(J)(7). The trial judge in the instant case neither made such findings nor indicated that such were appropriate. He told the jurors before they were discharged that he agreed with their verdict and would have rendered the same judgment had he been the trier of fact in the case. He specifically discussed certain aggravating circumstances involved in Appellant's case, including the viciousness of the attack causing the death of an infant. The statement now

challenged indicates to us the trial judge's conclusion that a term in excess of forty years was not warranted. The trial judge accordingly pronounced the standard statutory sentence of forty years. In view of the very strong facts and circumstances indicating Appellant's guilt, the trial judge was not required to offer in the record any explanation or justification for the jury's verdict. Only when a trial court finds that a new trial is required because of insufficient evidence are specific findings necessary. The jury had more than sufficient evidence in the instant case to find Appellant guilty beyond a reasonable doubt and the trial court sentenced him accordingly.

## II

Appellant argued that the trial court erred by admitting into evidence State's exhibits 1, 4, 6, 13, and 15 on the grounds that the showing of all said exhibits was not necessary and tended to be inflammatory thereby prejudicing the jury. Exhibit 1 was a photograph of Matthew with his mother, taken about one month before his murder. It was admitted for purposes of identification. Exhibit 4 showed Matthew during treatment at Riverview Hospital for his mortal wounds. Bruises on the left side of his head and on his left shoulder were visible. Exhibit 6 also showed Matthew during treatment at Riverview but depicted a different angle of his body to facilitate a view of Matthew's forehead which was not visible in Exhibit 4. Exhibits 4 and 6 were used in conjunction with the testimonies of Doctors Benz, Burt, Carter, Swindell and Terpstra. Exhibit 13 was a photograph taken during Matthew's autopsy and clearly showed Matthew's head injuries as well as certain abdominal incisions made to remove his kidneys. Matthew's kidneys were removed for transplanting after Matthew suffered "brain death." This procedure was explained to the jury without objection from Appellant. Exhibit 15 showed the injuries behind Matthew's left ear and was used during Appellant's testimony and during the testimony of Police Officer Robert Jeffries. Exhibit 15 also illustrated Doctor Swindell's testimony that Matthew's left ear was "one solid discolored bruise."

These contested exhibits showed Matthew's fatal injuries from different angles and were used by the various witnesses to illustrate their testimonies. Although they were gruesome by their very nature, they were not unduly so and they do not evidence any scheme on the part of the State to arouse or inflame the jury beyond the value of the scenes actually depicted. As members of this Court have previously stated:

"Murder, by its very nature, is a gruesome 'business.' One who takes the life of another human being cannot, with propriety, object to the full exposure of the wounds which he inflicted upon the body of his victim, merely because such evidence may tend to inflame the jury."

*Marshall v. State,* (1962) 242 Ind. 606, 610, 180 N.E.2d 233, 235, *reh. denied; see also: Grooms v. State,* (1978) 269 Ind. 212, 379 N.E.2d 458, *reh. denied.* The photographs were necessary for the jury to assess the extent of the injuries caused by Appellant so that it might gain a basis for deciding whether Appellant knowingly caused Matthew's death. They were not unduly inflammatory. *Akins v. State,* (1981) Ind., 429 N.E.2d 232, *reh. denied* (1982); *Vaden v. State,* (1978) 270 Ind. 29, 383 N.E.2d 60.

## III

During *voir dire* examination of the jury, the prosecuting attorney attempted to explain "circumstantial evidence" to the jury. After the jury's confusion on this matter became apparent, the trial judge volunteered an illustration in which he told the jury that if a person saw cow tracks across a field, then that person could reasonably conclude from the circumstantial evidence of the cow tracks that a cow had walked across that field. Appellant now claims that he was unduly prejudiced because the trial judge interposed himself on the side of the State by this illustration in aid of the State's case. In the first place, the record does not indicate that Appellant preserved this issue for appeal by objecting

to the trial judge's comment at the time it was made. He therefore waived any error that might have been caused by said remark. Second, Appellant fails to specifically show how he was harmed or prejudiced by the remark. *Abrams v. State*, (1980) Ind., 403 N.E.2d 345. We agree with the State that the trial judge's statement was nothing more than an exercise of his duty to promote an orderly and expeditious conclusion of *voir dire* examination. The trial judge had an obligation to promote an orderly progression of events at trial and an explanation of a concept such as circumstantial evidence was therefore proper. *Lawson v. State*, (1980) Ind., 412 N.E.2d 759.

Appellant additionally objects to a statement made by the trial judge during the testimony of Beverly Estep, mother of the victim. While testifying under direct examination by the prosecuting attorney, Beverly manifested some confusion about her previous statements regarding a previous conversation between herself and Appellant. The following ensued:

[Prosecutor]: Do you recall in that statement telling Officer Jeffries that after your conversation with Doctor Swindell at the hospital, that Ron told you words to the effect that, "You know what they're trying to say don't you?" . . . .

[Defense Counsel]: Now, . . . Excuse me. Excuse me. This is leading. If he can ask her, . . .

[Prosecutor]: Can I finish the question and then he can, . . .

[Defense Counsel]: He's going to testify in the form of the question, your Honor.

[Prosecutor]: She's already said, . . .

[Defense Counsel]: I object to his leading. The question is leading and he can ask her if she recalls a particular statement being made. I think he's asking her for hearsay testimony anyway. I object on both basis.

[Prosecutor]: Your Honor, I'm trying to first of all, refresh her recollection. Secondly, under Patterson, uh, we may have to put in a prior statement through another witness if she, in fact, denies or doesn't recall this particular statement. She's already testified she doesn't recall Ron saying anything to her. So I think I need to put this question in the record to have a foundation to put the subsequent questions in through the next witness.

THE COURT: As far as the hearway is concerned, Mr. Horne will be in the courtroom and he can, . . . . you can cross examine him as to whether or not such things were said.

[Defense Counsel]: I would further object to the form of the question as being an improper foundation for any attempt to refresh the recollection of the witness.

THE COURT: Of course, you haven't finished the question. That's my big problem.

[Prosecutor]: Let me withdraw it and approach it at a different angle.

THE COURT: Apparently the problem develops here because of her numerous answers that she doesn't remember. Am I, . . . .

[Prosecutor]: That's correct, your Honor.

THE COURT: Well, Gentlemen, if at this time this much later if she doesn't remember the details she gave in the statement that was close up, not res gestae, but closer up to the date of circumstances. I'm going to overrule your objection and allow it proper to set the foundation. But try to keep from testifying if you can. That would be objectionable.

\*　　\*　　\*　　\*　　\*　　\*

[Prosecutor]: Okay. Do you recall in that statement telling the officer that Ron had said to you at the emergency room after Doctor Swindell had talked to you words to the effect that, "You know what they're trying to say. That it's child abuse and I did it." Do you recall telling the officer that?

[Beverly Estep]: Uhh, I, . . . I think, . . . I really don't know. I think I did, yes.

[Prosecutor]: You're not sure whether you did or not?

[Beverly]: Something like that.

[Prosecutor]: Do you recall in that same statement telling the officer that Ron

had asked you repeatedly to call your mother when you first saw the baby at the house that night after he had been hurt?

[Defense Counsel]: Excuse me. I'm going to have to object at this point and time. She's indicated an inability to recall. And she says she doesn't recall the conversation, so now lawyer DeWester is attempting to testify on her behalf to the jury. And I'm going to object to his testifying and then her saying, "Well, I don't remember whether I said it or not." If he has a statement that suggests this, let him introduce it to her and show it to her and see if she remembers it and try to refresh her recollection. If there is no such statement, then let's not suggest that there is something that doesn't exist.

THE COURT: I'm going on the general rules, Gentlemen, which is to the effect that the human mind has a tendency to block out unpleasant things and in the passing of time, to block out things that they don't wish to recall. And the law recognizes that sometimes statements made close-up are much more accurate. Now, if you have such a statement made to Mr. Jeffries, I think Mr. Jeffries can introduce that she stated she things she did and she doesn't recall. I think you've gone about as far as you can go with her.

[Prosecutor]: All right. Thank you, your Honor.

■■■ No objection was made to the trial judge's statement when made and Beverly Estep's testimony continued uncontested for the remainder of that day in court. When the trial court reconvened the next morning, Appellant objected to the court's previously made statement. Appellant specifically requested the trial court to declare a mistrial and, in the alternative, to withdraw the cause from the jury since no admonishment could cure the damage done. Appellant's objection and corresponding motions were based on the claim that the trial court's statements tended to judiciously affirm Estep's credibility and constituted an invasion of the jury's province as it represented an attempt by the trial judge

to testify as an expert in an area which was not available for expert testimony. The trial judge denied Appellant's objection stating that because anyone of average intelligence would acknowledge the validity of his statement, it was not an expert opinion. It is true that a judge has the duty to remain impartial and to refrain from making comments which might prejudice the jurors. *Lawson v. State, supra.* This statement by the trial judge, however, was given as an explanation for his ruling. Appellant posed no objection at the time of this remark and did not request that the trial court admonish the jury when he finally did object the following day. If the remark amounted to error, therefore, Appellant waived that error by his failure to make a timely objection and/or request for admonishment. *Pavone v. State,* (1980) Ind., 402 N.E.2d 976, *reh. denied; Womack v. State,* (1978) Ind., 382 N.E.2d 939, *reh. denied* (1979) *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843.

■■■ We agree with the State that the trial court's remark did not exhibit such prejudice against Appellant or his defense as to deny him a fair trial. The trial court fully instructed the jury, both in the preliminary instructions and in the final instructions, that the jury was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. The jury was also instructed that it was to determine what evidence it would receive and what evidence it was to believe. The jury was further advised in the final instructions that if it believed that any witness had willfully and intentionally testified falsely as to any material fact, it could disregard that testimony in whole or in part. The trial court also gave Final Instruction Number 33 as follows:

"No word or expression of mine, no ruling or comment is to be deemed by you as any expression of a belief on my part or a disbelief of any witness or fact. The entire burden is upon you jurors to determine this case."

This issue does not, therefore, present any reversible error.

IV

■ The trial court sentenced Appellant to a term of forty years upon his conviction of murder. This was the basic sentence prescribed by Indiana's criminal code. Appellant now contends that the trial court did not consider certain circumstances which should have mitigated the basic statutory sentence. When the trial court imposes the basic sentence prescribed by a particular criminal statute, this Court presumes compliance with Ind.Code § 35–4.1–4–7 [§ 35–50–1A–7 (Burns 1979)] regardless of whether or not the record includes the trial court's specific enumeration of any aggravating and mitigating factors. *Meadows v. State,* (1981) Ind., 428 N.E.2d 1232; *Page v. State,* (1981) Ind., 424 N.E.2d 1021; *Gardner v. State,* (1979) 270 Ind. 627, 388 N.E.2d 513. We do not find this sentence to be manifestly unreasonable considering the nature of this heinous offense and the character of this offender. Ind.R.App.Rev. Sen. 2(1); *see also: Spinks v. State,* (1982) Ind., 437 N.E.2d 963; *Bish v. State,* (1981) Ind., 421 N.E.2d 608, *reh. denied; Gardner v. State, supra.*

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.