Robert **TAYLOR**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 45S00–8809–CR–843.

Supreme Court of Indiana.

March 7, 1991.

Daniel L. Bella, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Rape, a Class A felony; Criminal Confinement, a Class B felony; and Battery, a Class C felony. Appellant received fifty (50) years for Rape and twenty (20) years for confinement, the sentences to be served consecutively. The court ruled that no sentence should be imposed for the battery as it merged with the other counts.

The facts are: The victim, J.K., and her husband lived in one side of a double. The other side was occupied by appellant and his wife. The two women became good friends. On December 10, 1986, J.K. was in her home preparing to go to the home of her in-laws for a birthday party. Appellant knocked on her door and asked her to come over and look through some catalogues to choose Christmas presents for his wife. After a few minutes of looking at catalogues, J.K. advised appellant that she would have to leave.

As she approached the front door, appellant grabbed her and started kissing her. She resisted his advances, and when he stated his intention to have sexual intercourse with her, she reminded him that they both were married and again attempted to leave. However, appellant picked her up and carried her into the living room. As they passed the Christmas tree, J.K. grabbed it and pulled it over. Appellant grabbed her by the hair and pulled her into the kitchen where he grabbed a knife and held it to her side. He then pulled her back into the living room where he placed her face down on the couch and sat on her head.

During this time, she was begging appellant to let her sit up and talk with him. However, he insisted she was not leaving until they had sexual intercourse. He again grabbed her around the chest and held the knife to her side. He stood her up and told her to take off her pants. She informed him she was menstruating; however, he pulled her pants down, removed the tampon from her vagina, and threw it across the room. When she started struggling with appellant, he struck her and knocked her down several times. She received several blows to the head, face, and eyes. At one point, he grabbed her head and hit her in the mouth with his knee causing her to bleed. He also grabbed her

by the head and snapped her neck from side to side. He then strangled her until she became unconscious. During the altercation, appellant raped the victim.

When J.K. regained consciousness, she was lying on the floorboard of appellant's truck which he was driving down the street. When she sat up on the seat, appellant shouted at her that she was going to cause a scene. He then grabbed her by the hair and slammed her forehead into the dashboard twice. The victim was able to put her foot under the door lever as the truck was slowing to turn a corner. As the truck turned, she flipped the door open and threw herself out of the truck and landed in a ditch. She remembered getting up and starting to run but remembered nothing else until she woke up in the hospital.

Stanton Mezo testified that he observed what he at first thought was a small boy with his shirt off on the side of the road. When he pulled his truck over, he discovered that the person was female and that she was very shaky and frightened. He told her he would help her, and as he started to assist her, he heard a gunshot. He said that when he and the victim both fell to the ground, he heard a second shot. He observed a pickup truck, which later was identified as appellant's, being driven slowly down the road.

At that moment, a police car appeared and the officer, who also had heard the shots and observed appellant's pickup truck, got both Mezo and the victim in his squad car and called for assistance. An ambulance arrived shortly and transported the victim to the hospital where it was discovered that she had severe wounds. At first, she was hysterical and kept calling the name of her husband. However, as she began to regain lucidity, she was able to give the hospital attendants and police officers her attacker's identity and further told them that she feared for the life of appellant's wife. Upon receiving this information, the police officers went to appellant's home and forced entry, fearing that an emergency might exist concerning the life of appellant's wife.

In the meantime, appellant's wife had returned home, discovered the house in disarray with blood on the carpet and in the bathroom, and found a bloody tampon beside the television set. Appellant was arrested shortly thereafter but refused to talk to police.

At trial, he admitted that he and the victim had sexual intercourse on the day in question but that it was consensual, that she "flipped out" after the intercourse, that she obtained the knife and attacked him, and that he was forced to hit her in the mouth to protect himself. He claimed that when she jumped from his truck, he had been taking her to a clinic for treatment of the injury to her mouth.

Appellant claims the trial court erred in denying his motion to suppress evidence seized in a search of his truck and by allowing admission of the evidence found therein. Appellant takes the position that the police had total control of the truck, that there was no emergency involved, and that they should have obtained a search warrant before entering the truck. Therefore, he argues, any evidence obtained by the search of the truck was inadmissible, citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 and *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

Before the truck was ever opened, police were able to view blood on the dash and the floor on the passenger side and a bloody purple sweater later identified as belonging to the victim. These items were in plain view and their discovery by the police did not constitute an illegal search. *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502; *Marsh v. State* (1985), Ind., 477 N.E.2d 877. Having discovered this evidence without opening the truck, and further being informed that two shots were fired from the truck shortly after the victim escaped from the truck, the officers had probable cause to conduct a complete search of the truck. *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. The fact that the officers waited until they had towed the truck to the police station was of

no moment. *Texas v. White* (1975), 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209; *see Cobb v. State* (1980), 274 Ind. 342, 412 N.E.2d 728.

■ Even assuming for the sake of argument that the search of the truck was improper, we can find no reversible error. The evidence found in the truck was entirely consistent with appellant's testimony at trial. He testified that the victim was bleeding from the mouth, that he was transporting her to a clinic for treatment, and that before he could prevent her from doing so, she jumped from his truck. He also testified as to the presence of a gun and ammunition in the vehicle. Any error in the admission of evidence is rendered harmless by the subsequent admission of the same facts by the defendant. *See Morrison v. State* (1987), Ind., 516 N.E.2d 14; *Vaden v. State* (1978), 270 Ind. 29, 383 N.E.2d 60. We find no reversible error.

■ Appellant contends the trial court erred when it reversed its previous ruling granting his motion to suppress evidence seized during a search of appellant's residence. At the time the officers entered appellant's residence, they possessed the information that he was the victim's attacker and that his wife might well be in danger. Thus, they had probable cause coupled with exigent circumstances allowing them to enter the home out of concern for the safety of appellant's wife. *Coolidge, supra.* Once inside the home, they plainly could see that there was blood on the bathroom floor and that the Christmas tree had been turned over. They also observed earrings lying in the hallway which later were identified as the victim's.

■ Appellant takes the position that investigating authorities had no right to examine the blood samples without first obtaining a search warrant. This Court has held that evidence concerning items found in plain view is not the product of a search. *Garrett v. State* (1984), Ind., 466 N.E.2d 8. Even so, the trial court did not permit the State to introduce this evidence until appellant had testified, at which time the trial court permitted the State to introduce its findings as rebuttal evidence.

The United States Supreme Court has held that a defendant's testimony is subject to impeachment by the State using illegally obtained evidence previously ruled inadmissible as substantive evidence of guilt. *United States v. Havens* (1980), 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559; *Maciejack v. State* (1980), 273 Ind. 408, 404 N.E.2d 7. The trial court did not err in admitting the evidence obtained in the search of appellant's residence.

■ Appellant claims the trial court erred when it overruled his motion for mistrial as a result of the State's violation of appellant's marital privilege. Appellant's wife, Barbara Taylor, testified that when appellant came home shortly after the events involving the victim, he stated to her that he was in trouble. Prior to trial, the court examined a deposition taken of Barbara Taylor wherein she also had made the above statement. Prior to her testimony at trial, the judge cautioned her that she was not to reveal any such communication covered by the marital privilege.

However, when the prosecuting attorney asked her what she did when appellant came home, she said, "Well, he came in and said he was in trouble—" At that moment, appellant's counsel moved for mistrial, which was denied. The court, however, did admonish the jury to disregard the response and give it no weight. There is no question that spouses cannot testify as to information they have gained by reason of their marital relationship. *House v. State* (1989), Ind., 535 N.E.2d 103; *Shepherd v. State* (1971), 257 Ind. 229, 277 N.E.2d 165.

Even if we assume that Barbara's statement in the deposition, to which appellant failed to object when made or at publication during the trial, was not a waiver of the privilege, we nevertheless find no error. The trial court promptly and adequately admonished the jury that it was not to give weight to Barbara's unresponsive answer. Prompt admonition is presumed to cure error resulting from the admission of improper evidence. *Martin v. State* (1988), Ind., 528 N.E.2d 461.

We further would point out that appellant gave direct testimony concerning his communications with Barbara during the time in question. Thus the error, if any, was waived when appellant himself presented such information. *Vaden, supra; Bergmann v. State* (1985), Ind.App., 486 N.E.2d 653. We find no reversible error here.

The trial court is affirmed.

DICKSON and KRAHULIK, JJ., concur.

DeBRULER, J., concurs in result with separate opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, concurring in result.

At trial, in its case in chief, the prosecution was permitted to introduce incriminating evidence seized from the truck over a Fourth Amendment objection. After the State had rested, appellant chose to testify and to provide an explanation for such evidence which would serve to lessen its incriminating value. If one assumes, as the majority does in part of its argument, that this evidence was seized in derogation of constitutional protections and was erroneously permitted to be introduced as part of the State's case in chief, the legal question of whether the defendant's mollifying testimony renders such error harmless should be made by (1) examining any nexus between the introduction of evidence and the defendant's choice to testify, and (2) applying the federal standard for determining whether federal constitutional error was harmless, i.e., the reviewing court must be able to declare its belief that the error was harmless beyond a reasonable doubt. *Lloyd v. State* (1983), Ind., 448 N.E.2d 1062; *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158. While the cited cases deal with the defendant's testimony in the aftermath of Fifth Amendment error, rather than with a Fourth Amendment error as presented here, I see no principled reason to approach the problem differently.

Here, appellant was properly confronted at trial with the testimony of the alleged victim and evidence of her severe injuries. In light of the strength of this evidence, I judge that appellant would have testified and given support for his consent and self-defense defenses irrespective of the State's use of the seized items, and that therefore he was not compelled to take the stand by such use, and am able to declare a belief that an assumed constitutional error in permitting those seized items to be admitted at trial would be harmless beyond a reasonable doubt.

SHEPARD, C.J., concurs.