Mark Lewis HARDEN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8807–CR–625.

Supreme Court of Indiana.

Aug. 20, 1991.

William L. Soards, Soards & Fruechten-icht, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of three counts of Murder, one count of Robbery, a Class A felony, one count of Rape, a Class A felony, and one count of Confinement, a Class B felony. The three murder convictions were merged by the trial judge by reason of the fact that only one person had been killed. Although the jury recommended the death penalty, the trial judge found mitigating circumstances and sentenced appellant to forty (40) years enhanced by twenty (20) years for the murder, thirty (30) years for the robbery, and thirty (30) years for the rape, all of these sentences to be served consecutively. In addition, he gave a sentence of ten (10) years for the confinement to run concurrently with the murder conviction.

The facts are: On the night of June 3, 1986, Eunice Stone was a visitor in the home of appellant's parents. Appellant asked her for money. When she said she did not have any, he forced her to the garage where he raped her and beat her to death with his fist, a piece of concrete block, and a garage door spring. Her nude body was discovered by Almond Harden, the father of appellant. The police were summoned, and after questioning members of the family, they took appellant, who at that time was seventeen years of age, to police headquarters for further questioning. He requested that his father be present, which request was granted.

After consulting with his father in private for approximately twenty minutes, appellant gave a videotaped statement in which he admitted robbing, raping, and beating the victim to death with his fists, a spring from a garage door, and a piece of concrete block. Appellant stated that he had been drinking and smoking marijuana earlier on the day of the crime and that during its commission he had no control over his actions.

Appellant claims the trial court erred in failing to grant his motion to suppress his videotaped statement. He concedes that on the day of his arrest and prior to giving the statement, he and his father signed a juvenile rights waiver. However, he argues the waiver was improper because the State did not comply with Ind.Code § 31-6-7-3, which provides in pertinent part as follows:

> "(a) Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:
>
> (1) by counsel retained or appointed to represent the child, if the child knowingly and voluntarily joins with the waiver; or
>
> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
>
> (A) that person knowingly and voluntarily waives the right;
>
> (B) that person has no interest adverse to the child;
>
> (C) meaningful consultation has occurred between that person and the child; and
>
> (D) the child knowingly and voluntarily joins with the waiver."

Appellant claims the statute was violated in that he was not allowed "meaningful consultation" with his father. He cites *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138 for the proposition that in order for the waiver to be valid they must have been advised of their rights and they must have been given the opportunity for meaningful consultation. He cites *Hall v. State* (1976), 264 Ind. 448, 346 N.E.2d 584 for the proposition that the consultation must be held in the absence of police officers.

Appellant contends he was placed in an interrogation room at approximately 2:00 p.m. but that his father did not enter until about 6:00 p.m. at which time appellant was "cold, hungry, crying, and distraught," and that he was unable to say anything to his father. He claims that during the twenty minutes he and his father were alone in the room, all his father told him was that the police officers stated it would be easier on him if he talked. After this, the police

officers entered the room, advised both of them of their rights, they executed the waiver, and the videotaped statement was made.

At trial, after the State rested, appellant took the stand and testified as to the rape and murder of the decedent; every damaging admission contained in the tape was reiterated in appellant's testimony. The principle of law applicable in such circumstances is that a legal error in admitting proof of a fact is rendered harmless when the defendant himself testifies to the same fact. *MacGregor v. State* (1967), 249 Ind. 195, 231 N.E.2d 241. *See also Vaden v. State* (1978), 270 Ind. 29, 383 N.E.2d 60.

When the error is a constitutional one rather than a simple legal one, the constitutional harmless error standard applies. Before a constitutional error can be held harmless, the Court must be sufficiently confident to declare the error harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Thus, in the case before us, any error in admitting proof of appellant's damaging admission to his interrogators would be rendered harmless if, when appellant testified and reiterated what was in his admission, he was not compelled to do so in order to deny or explain away the admission nor substantially restricted thereby in his choice of defense tactics. *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158.

However, we find no defect in the manner in which the police proceeded in this case. Both appellant and his father were given their full advisement of rights, after which each signed the waiver. The father was permitted twenty minutes of private consultation with his son. The fact that the father advised the son to cooperate with the police in no way negates the fact they were provided the opportunity for consultation in compliance with the statute. *See Williams v. State* (1982), Ind., 433 N.E.2d 769.

■ Appellant further claims that his interrogation violated *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He claims the facts that he was in a room alone for over three hours without food or drink and was cold rendered his confession involuntary. The State points out that appellant was not taken into custody until 2:30 in the afternoon, well after the lunch hour, and that his father arrived at 6:00 p.m. and appellant's taped statement was taken shortly thereafter. There is nothing in the evidence, other than appellant's statement, to indicate that the room temperature was below normal or that there was any undue deprivation.

Detective Matthews testified that he told appellant only that it might be in his best interest to make a statement but did not say that the State would go easy on him. We see nothing in this case to indicate a violation of the standards set out in *Miranda, supra. See Poling v. State* (1987), Ind., 515 N.E.2d 1074, *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161. The trial court did not err in denying appellant's motion to suppress his statement.

■ Appellant raises four separate questions with regard to the trial court's rulings concerning prospective jurors. He contends the trial court erred when it refused to permit defense counsel to rehabilitate prospective jurors who were dismissed by the court because of an apparent opposition to the death penalty. Several prospective jurors emphatically stated that they would not give the death penalty. When this occurred, the trial judge dismissed them and did not permit counsel for appellant any further questioning of that prospective juror. Appellant cites *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 and *Lamar v. State* (1977), 266 Ind. 689, 366 N.E.2d 652 for the proposition that before a juror can be dismissed for cause due to his opposition to the death penalty, he must be irrevocably committed to vote against the death penalty regardless of the facts in the case. If a juror's answer is equivocal, then the court must pursue the matter further.

In the case at bar, the trial court clearly demonstrated its familiarity with this proposition of law and did not dismiss any juror until that juror had unequivocally stated

that he would not give the death penalty under any circumstances.

■ During *voir dire* of the jury, a Mrs. Miller tentatively was selected one day but was excused the following day by the court due to hardship. Appellant objected on the ground that this destroyed the "cohesive and uniform group of jurors" thus prejudicing appellant. A trial court has broad discretion to govern the conduct of *voir dire* examination of a jury. *Rondon v. State* (1989), Ind., 534 N.E.2d 719, *cert. denied*, —— U.S. ——, 110 S.Ct. 418, 107 L.Ed.2d 383. In a situation very similar to the case at bar, this Court held in *Newman v. State* (1985), Ind., 485 N.E.2d 58 that it was not an abuse of discretion for the trial court to excuse a prospective juror for hardship several days after she had been accepted at a time when the defendant had only one remaining peremptory challenge. We see nothing in this record to indicate the trial court abused its discretion in excusing Mrs. Miller.

■ Just prior to closing argument at the guilt phase of the trial, the court separately examined juror Kizer as to whether he had been sleeping during the presentation of evidence. Appellant claims this singled out juror Kizer and had a tendency to intimidate him; he thus should have been replaced with an alternate juror. Appellant cites Ind. Trial Rule 47(b) and *Campbell v. State* (1986), Ind., 500 N.E.2d 174. However, appellant concedes that the decision to excuse a juror in such a situation is within the trial court's discretion. After examining juror Kizer, it is obvious the trial court felt that the situation did not rise to the necessity of dismissing him. We cannot say that there was an abuse of discretion in this regard. We find no error in the manner in which the trial judge conducted the *voir dire* of the jury.

■ Appellant claims the trial court erred in overruling his motion to dismiss made during the testimony of witness Janet Jenkins, the victim's daughter. Appellant contends the prosecutor elicited testimony from Jenkins as to the impact of the victim's death upon members of the family. An examination of Jenkins' testimony reveals that on the day of the murder, she and her mother went shopping and the victim gave her daughter $80. When the prosecutor asked why she did that, the witness answered that her mother gave her $80 every month to help her pay the bills. Appellant claims this is in violation of *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440. The holding in *Booth* is that a victim impact statement cannot be used as evidence to be considered in imposing the death penalty. We would observe that although the jury in this case recommended the death penalty, the trial judge did not accept that recommendation and sentenced appellant to a term of years. Therefore, no impact upon the family was involved in the sentencing of appellant in violation of the principles laid down in *Booth.*

We further would point out that the statement by Janet Jenkins concerning her receipt of $80 from her mother did not come as a result of any direct questioning concerning family impact. An examination of Jenkins' testimony shows she was called by the State to show that on the day of the murder, the victim had cashed her social security check of approximately $280. The mother and daughter then went shopping and the daughter testified as to approximately how much of the money her mother spent. The purpose of the testimony was to determine how much of the $280 the mother still had on her person at the time she was killed. The daughter also testified that her mother wrapped money in one of her father's handkerchiefs and pinned it to her brassiere for safekeeping.

She then identified State's Exhibit No. 1 as one of her father's handkerchiefs. Police Officer Timothy Murphy testified that it was a handkerchief he had recovered from the porch of the residence where the victim was murdered. It is obvious the purpose of the testimony was to prove the charge of robbery by establishing the fact that the victim did have a sum of money wrapped in a handkerchief pinned to her brassiere at the time she was attacked by appellant. The fact that the daughter had received $80 from her mother was merely

incidental to the inquiry. We see no reversible error.

■ Appellant contends the trial court erred in admitting Exhibit No. 15, a videotape of the alleged crime scene. Appellant claims the tape was not relevant because the crime was committed at night and the tape was recorded in the daylight the following morning. It is true that to replicate the exact conditions prevailing at the time the crime was committed, the tape would have to have been made at night. However, had this been done it is doubtful that the depiction would have been very good. Officers testified that the conditions depicted on the tape were as they found them when they arrived to begin their investigation the morning after the crime had been committed.

■ Appellant also contends the tape should not have been admitted because it is gruesome in that it shows the nude body of the victim lying on the garage floor. Appellant is correct in observing there have been no Indiana cases directly concerning the allegedly gruesome content of a videotape. However, he submits that the same standard should be applied to videotapes as is applied to still photographs. The State agrees with this contention, and we likewise concur.

We have stated repeatedly that photographs are relevant if they depict subjects that a witness would be permitted to describe, and that photographic evidence admitted over a claim of being unduly repetitious and gruesome is reversible only for an abuse of discretion. *Askew v. State* (1982), Ind., 439 N.E.2d 1350. The tape in question depicts the scene as it first appeared to the investigating officers. It is obvious the tape would help the jury to understand the verbal descriptions of the scene and the evidence obtained at that time. *See Swanigan v. State* (1986), Ind., 499 N.E.2d 732. We see no abuse of the trial court's discretion in admitting the tape in evidence.

■ Appellant raises essentially the same objection to still photographs taken of the victim which depict the injuries to her head and body. These pictures, of course, by their very nature are somewhat gruesome; however, they obviously aided the witnesses in describing the nature and extent of the injuries suffered by the victim. The admission of these photographs adheres to the principles laid down in *Swanigan.* We see no error in their admission.

■ Appellant claims the trial court erred in admitting State's Exhibit No. 27 in evidence. This exhibit was a tooth of the victim which was found at the scene of the crime. The fact that a tooth had been knocked from the victim's jaw helps to demonstrate the violence of the attack. Such aspect, of course, was germane to the charges against appellant. *See Larkin v. State* (1979), 271 Ind. 469, 393 N.E.2d 180. We see no error here.

■ Appellant contends the trial court erred in giving its preliminary and final instructions to the jury without including all of the instructions offered by appellant. An examination of instructions given by the court and those tendered by appellant demonstrates that the subject matter of the tendered instructions was covered by the instructions given by the trial court. It is not error to refuse an instruction adequately covered by other instructions. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349.

■ Appellant also claims the court erred in refusing his instructions tendered during the penalty phase of the trial. Here again, the instructions were covered by the trial court. Moreover, we would point out that appellant did not receive the death penalty recommended by the jury. Therefore, even had there been error in excluding appellant's instructions, it would not rise to the level of reversible error, which requires a showing of prejudice. *See Woolston v. State* (1983), Ind., 453 N.E.2d 965.

■ Appellant contends that during the instructions to the jury, it was error for the trial court to refer to the bifurcated nature of the proceeding and that it was error to refer to the advisory nature of the jury's death penalty verdict. As to the

trial court's reference to the bifurcated nature of the proceedings, his remarks correctly informed the jury as to the nature of the proceeding. This was not prejudicial and thus not reversible. *Woolston, supra.* It also was proper for the court to refer accurately to the advisory nature of the jury's death penalty verdict. *Caldwell v. Mississippi* (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231. However, because appellant did not receive the death penalty the issue has no relevance in this case.

We further would point out that the situation concerning the bifurcated nature of a capital case in Indiana is not covered by the opinion in *Caldwell.* In that case, the prosecuting attorney advised the jury that the final determination as to whether the defendant would die was not their responsibility, because the death sentence would be reviewed for correctness by the Mississippi Supreme Court. The United States Supreme Court held this improperly shifted the responsibility from the jury to others as to the death penalty. In Indiana, the legislature has seen fit to bifurcate the proceedings in order to extend the maximum protection to the defendant. However, we have held that informing the jury of their function in the bifurcated proceeding is proper and that such information does not violate the principles laid down in *Caldwell.* See *Huffman v. State* (1989), Ind., 543 N.E.2d 360, *cert. denied,* — U.S. ——, 110 S.Ct. 3257, 111 L.Ed.2d 767.

■ Appellant claims the trial court improperly sentenced him to a total term of one hundred twenty (120) years imprisonment. He claims the trial court should have given him a lesser sentence based upon what he describes as "clear mitigation." The trial judge in fact did list a series of what he considered to be mitigating circumstances. He found that appellant's prior criminal activity was not of a substantial nature; that it did not include crimes of violence; that his prior incarceration in White's Institute showed that he responded to an attempt at rehabilitation; that appellant had remorse as evidenced by his admission and confession shortly after the offense; that he did not attempt to avoid arrest or responsibility but consistently recognized his culpability; that he

was a neglected and abused child; and that he in fact sought to be readmitted to White's Institute rather than be sent home. The trial judge also found that appellant's age of seventeen at the time of the commission of the crime was a mitigating factor and that he had not sought to join any gangs.

However, in weighing these mitigating circumstances against the aggravating circumstances, the court found that the victim was above the age of sixty-five years and was helpless in the hands of appellant, and that the crime was an intentional killing in an attempt to commit a robbery. The trial judge found that although the mitigating circumstances precluded imposing the death penalty, the aggravating circumstances warranted the enhancement of the sentence for murder and the decision that the robbery and rape convictions would run consecutively to the murder count. The court's findings fully justified the sentence imposed.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and KRAHULIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.