Joshua James DAVIES, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A04–0103–CR–102.

Court of Appeals of Indiana.

Nov. 28, 2001.

Richard Walker, Anderson, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## MEMORANDUM DECISION

BROOK, Judge.

### Case Summary

Appellant-defendant Joshua James Davies ("Davies") appeals the sentence he received after pleading guilty to murder,[1] a felony, burglary[2] as a Class A felony, and criminal deviate conduct[3] as a Class A felony. We affirm.

### Issues

Davies raises one issue for review, which we restate as the following three:

I. whether the trial court properly considered certain aggravators and mitigators;

II. whether the trial court properly ordered Davies' sentences to run consecutively; and

III. whether his sentence is manifestly unreasonable.

### Facts and Procedural History

At approximately 1:30 a.m. on May 3, 2000, while under electronic monitoring for violating his parole, sixteen-year-old Davies broke into his next-door-neighbor's home by cutting a screen and opening a kitchen window. Davies then unlocked the back door, entered the bedroom of thirteen-year-old J.L., hit her on the head with a hammer, and attempted to rape her. Unable to achieve intercourse, Davies inserted his finger into her vagina. To stop J.L. from screaming, Davies hit her on the head at least three, but as many as eleven, times with the hammer. Sometime during this encounter, J.L.'s screams woke her stepsister, L.H. L.H. rushed to J.L.'s room where Davies hit her in the head with the hammer until she "blacked-out". J.L.'s father awoke and chased Davies as he fled the premises through the unlocked back door, but could not catch him.

J.L. was rushed to the emergency room but died because of multiple blunt force injuries to her head. Soon after the incident, the police apprehended Davies and charged him with criminal confinement, rape, child molesting, burglary, aggravated battery, murder, criminal deviate conduct, and eight counts of death penalty enhancement. On December 27, 2000, Davies pled guilty to murder, burglary, criminal deviate conduct, and aggravated battery.[4] In accordance with the plea, the State dismissed all but two of the death penalty enhancements and reduced the remaining

---

1. *See* IND.CODE § 35–42–1–1(1) ("A person who ... knowingly or intentionally kills another human being ... commits a felony.").

2. *Id.* § 35–43–2–1.

3. *Id.* § 35–42–4–2.

4. The trial court did not enter judgment on the aggravated battery plea because of double jeopardy concerns.

enhancements to life in prison without parole.

The trial court conducted a bifurcated hearing on February 5, 2001, to determine Davies' intent[5] and sentence, during which the trial court found as follows:

> I think of the mitigators which have been suggested by the defense, [Davies'] age has the greatest weight and the highest significance. First, as has been pointed out, age is a statutory mitigator. Both the Legislature and our Appellate Courts expect that a juvenile's age be given due consideration. The law demands that we acknowledge that a 16–year old is likely to be self-centered, lacking in insight, suffer from poor judgment, be impulsive, at least compared with mature adults. And at the time of this offense, not only was [Davies] 16, not 17 and not 18 as the language of the Statute suggests for purposes of mitigation, but there is some evidence in the record from multiple sources to suggest that emotionally, he was a particularly immature 16–year old.
>
> We've heard a fair amount about Fetal Alcohol Syndrome and Fetal Alcohol Effects [ ("FAE") ]. It's the second mitigator entitled to some weight in this case. There is some evidence that the defendant suffers from an organic brain injury which has been characterized for us as [FAE]. I believe the mitigator, however, should be entitled to minimal weight. First, the [FAE] are mild at best. There's no evidence that they're severe in [Davies'] case. And although mild [FAE] are consistent with problem-solving deficits, impulsivity, high levels of frustration and so forth, as the testimony came out, there is no evidence that mild [FAE] leads to violent sociopathic behavior. While [FAE] may help to explain [Davies], the evidence certainly does not support a conclusion that he committed these horrible crimes because of [FAE]. The Statute relevant here requires a substantial impairment or suggests that a substantial impairment is appropriate when giving weight, at least serious weight to this area of mitigation. And there simply is no evidence of serious mental illness. The professionals have agreed that the generic term "seriously disturbed" may be appropriate, but the professional, more appropriate terms don't apply. [Davies] knows right from wrong. He has an average I.Q. He is not delusional. He is fully oriented. He has no thought disorders.
>
> Concerning parental neglect and abuse, again, I believe that is entitled to minimal weight as a mitigator. At first, I was inclined to reject this proposed mitigator altogether. The evidence is convenient and self-serving. A convenient excuse, at least that was my initial assessment. But, when thinking about this and piecing it together with all the other evidence, the cumulative effect does require, it seems to me, some weight be given to this mitigator. The Babe Ruth Coach witnessed lack of supervision. He reported to us seeing [Davies] out at 2:00 in the morning. "Observed that no one seemed to be there for [Davies]." Counselor at Boot Camp reported, "Couldn't get family involved. [Davies] seemed emotionally

---

5. A court may impose the death penalty or life without parole if the State proves one aggravator beyond a reasonable doubt and the court finds that the mitigating circumstances are outweighed by the aggravating circumstances. *See* IND.CODE § 35–50–2–9(k).

Indiana Code Section 35–50–2–9(b)(1)(B) and (D) provide in part that aggravating circumstances include an intentional killing while committing burglary or criminal deviate conduct.

detached from his family." Associates and friends of his parents described his parents as "self-consumed, unavailable." His third grade teacher told us his parents were not engaged. Again, many children are unsupervised with parents who are emotionally absent. Few of them commit violent crimes. The language of the Statute is, "Extreme emotional disturbance." The Statute [sic] does not support such a finding. Beyond that, [Davies] has an older sister who, I think we can assume, suffered from the same kind of neglect. She committed no crimes. For that reason, I think neglect and parental abuse is entitled to only minimal weight, but at least some weight.

Remorse and acceptance of responsibility. Boot Camp Counselor told us, "[Davies] shows little remorse for his wrongdoing." [Davies] told Rob Adams [ ("Adams") ] he wasn't sure how he felt. His evaluation acknowledged that there appears to be a lack of remorse. I think the guilty plea is more likely the result of pragmatism than acceptance of responsibility and remorse. Not including remorse or acceptance of responsibility entitled [sic] to any weight in this case.

With respect to aggravation, an intentional killing has been alleged in Counts VIII [death penalty enhancement for an intentional killing while committing burglary] and X [death penalty enhancement for an intentional killing while committing criminal deviate conduct]. [Davies] has consistently maintained that be broke in to "steal stuff." That is consistent with a pattern of thefts and burglaries that we know about. That's not the end of the inquiry, however, because it is possible that the first blow was intended to knock [J.L.] unconscious, part of a plan to rape, violate her, but as I think Mr. Williams said, even the most immature 16–year old knows the consequences of a repeated series of blows to the head with a steel hammer. It's my conclusion, as it is the Probation Department's of this Court, that at some point, [Davies] made the decision to leave no witness. Killing was intentional. The State has proved its charged aggravator, an aggravator of substantial weight.

There are other aggravators. There are multiple victims in this case. [L.H.], we haven't talked about much, but she was seriously and permanently injured and might have been killed, but for [Davies] being frightened away. Second, there is a pattern of delinquency acknowledged by everyone, including the defendant's Mitigator, and noted by the Probation Department: burglaries, thefts, probation and parole violations, little or no response to intervention efforts. Also, as an aggravator, a murder victim who is a totally defenseless sleeping 13 year old, young, asleep in her own bed, brutally, viciously, sexually assaulted and then murdered. The aggravators substantially outweigh the mitigators.

(Paragraph format altered from original.)

In its written sentencing order, the trial court gave the intentional killing and multiple victim aggravators significant weight and gave moderate weight to Davies' pattern of delinquency and the nature and circumstances of the crime. As for the mitigators, the trial court gave significant weight to Davies' age, minimal weight to FAE and parental neglect and abuse, and no weight to remorse and acceptance of responsibility. Finally, the trial court concluded that the aggravators substantially outweighed the mitigators and sentenced Davies to sixty-two years for murder, twenty years for burglary, and twenty-six years for criminal deviate conduct, to be

served consecutively for a total of 108 years.

## Discussion and Decision

### I. Consideration of Aggravators and Mitigators

We will only reverse a sentence upon a showing of a manifest abuse of discretion. *See Allen v. State*, 722 N.E.2d 1246, 1250 (Ind.Ct.App.2000). In order to enhance a sentence, the trial court is required to " '(1) identify all significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and, (3) articulate the court's evaluation and balancing of the circumstances.' " *Id.* (quoting *Thacker v. State*, 709 N.E.2d 3, 9 (Ind.1999)). A single aggravating factor is sufficient to sustain an enhanced sentence. *See Cleary v. State*, 638 N.E.2d 431, 434 (Ind.Ct.App. 1994). Finally, our review is not limited to the written sentencing order; we are required to look at the entire record including the sentencing hearing. *See Allen*, 722 N.E.2d at 1254.

### A. Aggravators

Davies does not dispute the trial court's consideration of the nature and circumstances of the crime and the multiple victims involved as aggravators; however, he argues that the court erroneously enhanced the murder sentence by considering the intentional killing and his juvenile record as aggravators.

### 1. Intentional Killing

With respect to the issue of intent, Davies asserts that a factor constituting a material element of the crime cannot also be used as an aggravator. Generally speaking, Davies is correct. *See Stone v. State*, 727 N.E.2d 33, 37 (Ind.Ct.App.2000) (holding that, while a court may consider the particularized circumstances of a

crime, "a fact that comprises a material element of the offense may not also constitute an aggravating circumstance to support an enhanced sentence."). However, our supreme court has carved out a narrow exception in cases where the defendant is eligible for either the death penalty or life without parole pursuant to Indiana Code Section 35–50–2–9, but is instead sentenced to a term of years.

In such cases, the trial court may consider the aggravating factors enumerated in Indiana Code Section 35–50–2–9 in addition to the factors listed in Indiana Code Section 35–38–1–7.1. *See Harden v. State*, 576 N.E.2d 590, 596 (Ind.1991) (affirming a 120–year sentence where the trial court properly considered "that the crime was an intentional killing in an attempt to commit a robbery" as an aggravator, but refused to impose the death penalty); *see also Holsinger v. State*, 750 N.E.2d 354, 364–65 (Ind.2001) (considering the aggravating factors listed in both IND.CODE §§ 35–50–2–9 and 35–38–1–7.1 when sentencing an offender to a term of years instead of life in prison without parole). Here, the trial court found that the killing was intentional and could have sentenced Davies to life in prison without parole. Instead, the trial court sentenced him to a term of years and properly considered the aggravators enumerated in Indiana Code Sections 35–50–2–9 and 35–38–1–7.1.

### 2. Juvenile History

Davies also argues that the trial court improperly considered his juvenile history as an aggravator because the presentence investigation report ("PSI") did not indicate that Davies was previously involved in violent crimes. However, neither case law nor statute requires that a criminal history contain a violent crime before a trial court can consider it as an aggravator. *See Ford v. State*, 718 N.E.2d 1104, 1107 (Ind.1999). Davies also argues

that the trial court's consideration of his juvenile history was improper because neither the PSI nor the record reveals the specifics of his juvenile history, as is required before it may be considered as a valid aggravator. *See Allen,* 722 N.E.2d at 1256. On the contrary, the record contains numerous references to the specific facts and disposition of Davies' juvenile offenses.[6] Thus, the trial court properly considered Davies' juvenile history as an aggravator. *See Fuller v. State,* 639 N.E.2d 344, 350 (Ind.Ct.App.1994) (holding that the trial court properly considered the defendant's juvenile history because the record revealed the underlying facts and the disposition the offenses).

## B. Mitigators

Davies also challenges the trial court's assessment of the mitigators. He argues that the trial court failed to recognize Davies' guilty plea, good behavior during pre-trial incarceration, and remorse as aggravators. He also argues that the trial court failed to give adequate weight to FAE as a mitigator.

### 1. Guilty Plea

■ Although Davies argues that the trial court improperly failed to consider his guilty plea, the trial court has the discretion to determine the existence and the weight given to a mitigator. *See Allen,* 722 N.E.2d at 1251. Further, the trial court is not required to give the same weight to a mitigator as would the defendant. *See id.* Moreover, the trial court need not consider a mitigator that is highly disputable in nature, weight, or significance. *See Wilkins v. State,* 500 N.E.2d

747, 749 (Ind.1986). The record indicates that the trial court considered Davies' guilty plea, but determined that it was "more likely the result of pragmatism than acceptance of responsibility and remorse." Absent contrary evidence, there is no indication that the court abused its discretion in failing to consider Davies' guilty plea as a mitigator.

### 2. Good Behavior

■ As to Davies' alleged good behavior, the jail commander at the Madison County Sheriff's Department testified that three disciplinary actions were initiated against Davies during his pre-trial incarceration. Two of the actions, which involved a verbal altercation over a gambling debt and digging around a concrete block that led to the women's shower, were "administratively dismissed." The third action, which arose from Davies making "loud and boisterous noise," resulted in disciplinary proceedings. Thus, we cannot conclude that the trial court abused its discretion by failing to find Davies' alleged good behavior as a mitigator.

### 3. Remorse

■ Davies argues that the trial court erred in not giving any weight to remorse as a mitigator because of his statement to Adams that, "I don't really know how I felt... I guess helpless, kind of sad, I didn't mean to kill her." Davies also relies on the testimony of his mitigation investigator, Michelle Delph ("Delph"), who testified that she thought Davies showed remorse. However, Davies' statement only

---

6. Adams, a licensed social worker and certified school psychologist prepared a written report and testified on Davies behalf at the sentencing hearing. Both the report and Adams' testimony recount the details of some of Davies' numerous juvenile adjudications, which include burglaries, theft, criminal conversion, driving without a license, and parole and curfew violations. Further, the PSI indicates that from 1998 until the time of the murder Davies had been placed on probation and sentenced to community service, boot camp, commitment to the Department of Correction, and house arrest.

shows that he was "sad," not that he was remorseful about causing J.L.'s death. And, while Delph did testify that she thought Davies' remorse was a possible mitigator, boot camp counselor Bernard Sarkissian stated in his affidavit that Davies "shows little remorse." Given this contradictory evidence, we conclude that the trial court did not abuse its discretion by giving no weight to remorse as a mitigator.

### 4. FAE

■ Davies argues that the trial court failed to give adequate weight to FAE as a mitigator. He asserts that it is unclear to which statute the trial court referred in considering FAE and claims that "[t]he court seems to be holding [him] to a higher standard of mental illness relative to a true defense, rather than the mitigation that this evidence was offered for." However, the trial court was clearly referring to Indiana Code Section 35–50–2–9 when it stated that "[t]he Statute relevant here requires a *substantial impairment* or suggests that a *substantial impairment* is appropriate when giving weight, at least serious weight to this area of mitigation." (Emphases added). *See* IND.CODE § 35–50–2–9(c)(6) (listing as a mitigator "[t]he defendant's capacity to appreciate the criminality of the defendant's conduct or to

conform that conduct to the requirements of law was *substantially impaired* as a result of mental disease or defect . . . .") (emphasis added).

Although Davies' argument is confusing, he appears to equate FAE with a mental disease or defect under Indiana Code Section 35–41–3–6[7] or mental retardation under Indiana Code Section 35–36–9–2[8] in asserting that the trial court improperly determined what weight to give "mental illness" as a mitigator.[9] Davies relies on the report of Dr. Paul Guastadisegni ("Guastadisegni") to support his argument.[10] Although Guastadisegni's report did establish that Davies' behavior problems include "impulsivity; poor planning; poor reasoning skills; difficulty in multitasking; difficulty in integrating information; memory impairment; and poorly controlled behavior," it also indicated that Davies has neurocognitive strengths including an average IQ, reading and spelling scores at the high school level, arithmetic scores at a post-high school level, and an average capacity for social judgment and reasoning.

Davies also relies on Adams' report, which described him as impulsive, incapable of fully understanding "cause and effect," and unable to appreciate that other

---

7. Indiana Code Section 35–41–3–6, as a defense to culpability, defines "mental disease or defect" as "a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct."

8. Indiana Code Section 35–36–9–2 applies in death penalty cases and defines a mentally retarded individual as "an individual who, before becoming twenty-two (22) years of age, manifests: (1) significantly subaverage intellectual functioning; and (2) substantial impairment of adaptive behavior; that is documented in a court ordered evaluative report."

9. Davies argues that the trial court should have considered the factors enumerated in *Biehl v. State*, 738 N.E.2d 337 (Ind.Ct.App. 2000), to determine how much weight, if any, should be given to mental illness during sentencing. However, in *Biehl*, the jury found the defendant guilty but mentally ill. *See id.* at 339. Since no such finding was made here, we find *Biehl* inapplicable.

10. Guastadisegni, a neuropsychologist who frequently works with children suffering from fetal alcohol syndrome and FAE, testified as an expert witness at Davies' sentencing hearing.

people may not be able to endure and survive the type of situation that he caused. However, Adams also reported that "[o]bviously, [Davies] knew what he was doing was wrong, but, given his previous experience, likely figured he would (if caught) just wind up going back to another facility to spend more time in a very structured, regimented environment which he admitted he 'liked'." While the testimony of Guastadisegni and Adams indicates that Davies suffered neurocognitive deficits and other dysfunctions, their testimony does not establish that a mental disease or defect substantially impaired Davies' ability to appreciate the criminality of his conduct or conform that conduct to the requirements of the law. As such, we cannot conclude that the trial court abused its discretion in giving minimal weight to FAE as a mitigator under Indiana Code Section 35–50–2–9.

 In conclusion, the trial court properly identified all significant aggrava-

tors and mitigators, stated the reason why each was designated as such, and articulated its evaluation and balancing of the aggravators and mitigators.[11] Finding no manifest abuse of discretion, we affirm the trial court's assessment of the aggravators and mitigators.

## II. Consecutive Sentences

 Davies baldly asserts that the trial court should have ordered his sentences to run concurrently because the murder, burglary, and criminal deviate conduct occurred contemporaneously, but we find no statutory authority or case law to support this assertion.[12] We can only presume that Davies is attempting to characterize his actions as a single episode of criminal conduct, which would place certain limitations on the duration of consecutive sentences under Indiana Code Section 35–50–1–2(c). However, we need not address this issue because such limitations do

---

11. We note that in its balancing process the trial court found that the aggravators outweighed the mitigators, but nevertheless sentenced Davies to less than the statutory presumptive term on the burglary and criminal deviate conduct charges without explanation. Specifically, the trial court sentenced Davies to ten years less than the presumptive for burglary and four years less than the presumptive for criminal deviate conduct. *See* IND.CODE § 35–50–2–4 (stating that the presumptive sentence for a Class A felony is thirty years, which may be enhanced by twenty years or reduced by ten years). "[W]hen a trial court imposes a sentence less than the presumptive sentence, the court must disclose in the record which mitigating factors were used by the court in the reduction of the sentence." *Wagner v. State,* 471 N.E.2d 669, 671 (Ind.1984). Thus, because the trial court failed to disclose why it sentenced Davies to less than the presumptive sentence on these charges, it appears that the trial court erroneously reduced the sentences.

However, when faced with a sentencing irregularity, "we have the option to remand to the trial court for a clarification or new sentencing determination; to affirm the sentence

if the error is harmless; and to reweigh the proper aggravating and mitigating circumstances independently at the appellate level." *Holsinger,* 750 N.E.2d at 363. Because Davies suffered no prejudice as a result of the shorter sentences, we conclude that the error was harmless and affirm the reduced sentence. *See, e.g., Moredock v. State,* 693 N.E.2d 961, 962 (Ind.Ct.App.1998) (declining to set aside an improperly imposed concurrent sentence ordered pursuant to a plea agreement because "Moredock did not suffer any harm by being sentenced to serve concurrent instead of consecutive time; rather, he benefited from being able to serve the time concurrently.").

12. While Davies appears to rely on *Cherrone v. State,* 726 N.E.2d 251 (Ind.2000), as a basis for his argument, his reliance is misplaced. In *Cherrone,* our supreme court ordered the trial court on remand to impose a concurrent, rather than consecutive, sentence in order to correct a manifestly unreasonable sentence, not because the crimes were committed contemporaneously. *See id.* at 256.

not apply to crimes of violence, which include murder, burglary, and criminal deviate conduct. *See* IND.CODE § 35–50–1–2(a). Further, "a *single* aggravating circumstance may be used both to enhance a sentence and to impose consecutive sentences." *Allen*, 722 N.E.2d at 1253. As such, the trial court properly sentenced Davies to consecutive terms.

### III. Manifestly Unreasonable Sentence

■ Davies argues that a sentence of 108 years is manifestly unreasonable because he was only sixteen and suffered from FAE when he committed the crimes.[13] However, we will not revise a sentence unless it is manifestly unreasonable in light of the nature of the offense and character of the offender. *See* Ind. Appellate Rule 7(B). " 'The issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so.' " *See Allen*, 722 N.E.2d at 1250 (citations omitted).

Davies erroneously relies on three cases: *Cherrone v. State*, 726 N.E.2d 251, 256 (Ind.2000), in which our supreme court found that the imposition of maximum consecutive sentences for a sixteen-year-old offender convicted of murder and attempted robbery, without a history of significant criminal activity, was manifestly unreasonable; *Evans v. State*, 725 N.E.2d 850, 851 (Ind.2000), in which our supreme court held that imposing the maximum sentence for dealing in cocaine as a Class A felony was clearly, plainly, and obviously unreasonable where the offender was a nineteen-year-old with no violent criminal history; and *Love v. State*, 741 N.E.2d 789,

795 (Ind.Ct.App.2001), in which a panel of this court followed *Evans* and held that imposing the maximum sentence for dealing in cocaine as a Class A felony was manifestly unreasonable where the nineteen-year-old offender had no violent criminal history.

■ Unlike Cherrone, however, Davies has an extensive juvenile record, and unlike Evans and Love, Davies pleaded guilty to murder, burglary, and criminal deviate conduct, not a drug offense. Further, unlike all three defendants, Davies did not receive the maximum sentence for his crimes. We are therefore guided by several cases that have upheld lengthy sentences for young offenders. For example, in *Harden*, 576 N.E.2d at 596, our supreme court upheld a 120–year sentence for a seventeen-year-old with no violent criminal history who committed an intentional killing during the commission of a robbery. *See also Garrett v. State*, 714 N.E.2d 618, 623 (Ind.1999) (holding that a sixty-five-year sentence for murder was not manifestly unreasonable for a seventeen-year-old offender with a nonviolent criminal history); *Wesby v. State*, 535 N.E.2d 133, 137 (Ind.1989) (holding that, despite the offender's young age of eighteen, an enhanced sentence of fifty years for felony murder was not manifestly unreasonable when enhancement was based in part on prior unsuccessful attempts at rehabilitation and his lack of remorse). Thus, in light of the nature of the offense, a brutal sexual assault and murder, and the character of the offender, a sixteen-year-old with a lengthy juvenile history,

---

**13.** Davies also argues that the court erroneously ordered his sentences to run consecutively; however, since we previously addressed this argument, we need not address it again. He also argues that the sentence is manifestly unreasonable because he did not intentionally kill J.L. Again, we need not address this argument because the trial court specifically concluded that the State proved beyond a reasonable doubt that the killing was intentional, and Davies does not contend that the trial court erred in reaching this conclusion.

the 108–year sentence is not clearly, plainly, and obviously unreasonable.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.